[Cite as *State v. Smiley*, 2012-Ohio-1742.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 97047

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## CHARLES SMILEY

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-545928

**BEFORE:** Kilbane, J., Boyle, P.J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:** April 19, 2012

**ATTORNEY FOR APPELLANT**

Joseph Vincent Pagano
P.O. Box 16869
Rocky River, Ohio 44116

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
Sherrie S. Royster
Assistant County Prosecutor
The Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, J.:

**{¶1}** Defendant-appellant, Charles Smiley ("Smiley"), appeals his convictions. Finding no merit to the appeal, we affirm.

**{¶2}** In January 2011, Smiley was charged in a seven-count indictment. Count 1 charged him with felonious assault and carried one- and three-year firearm specifications and a weapon forfeiture specification. Count 3 charged him with kidnapping and carried one- and three-year firearm specifications. Count 4 charged him with having a weapon while under disability. Count 7 charged him with resisting arrest. The matter proceeded to a bench trial, at which the following evidence was adduced.

**{¶3}** In the early morning hours of January 2, 2011, Cleveland police officers Martina Latessa ("Latessa") and Dorothy Todd ("Todd"), responded to a dispatch call at 1415 East 110th Street in Cleveland, Ohio. When Latessa arrived on the scene, she spoke with the victim, Deshawn Maines ("Maines"). Maines called the police after being held at gunpoint by Smiley and hit with a baseball bat by another male.

**{¶4}** Maines testified that he was outside his house talking to "Juan," whom he later identified as Smiley, when the confrontation occurred. Smiley came over to collect $90 from Maines for drugs that Maines bought from Smiley. Smiley was going to drive Maines to an ATM to get the money. As they walked towards Smiley's vehicle, a male exited from the front of the vehicle, grabbed a baseball bat, and approached Maines. Smiley then pointed a gun at Maines's chest and told him "don't move." Two more men jumped out of the vehicle and surrounded Maines. The male with the bat tried to hit

Maines. At this point, Maines's family came outside. The male with the bat then threw the bat at Maines. Maines ducked, and the bat hit the front window of Maines's home. Smiley and the other males then left the scene.

{¶5} Maines relayed the license plate number of the vehicle to the police, who located the vehicle shortly thereafter. Cleveland police officer Christopher Mobley ("Mobley") arrived on the scene and approached the vehicle. He observed Smiley standing next to the front passenger door. Mobley, who was in uniform, asked Smiley to show his hands. Mobley testified that Smiley made a tossing motion into the vehicle. Mobley again asked Smiley to show his hands. Smiley began to walk away and Mobley walked towards him. Smiley then ran away. Mobley chased after Smiley for about one block, but lost track of him. Officers located a .9 millimeter gun in the backseat of the vehicle.

{¶6} Cleveland police officer Orville Taylor ("Taylor") assisted with the foot pursuit of Smiley. Taylor testified that when he arrived on the scene, he observed Smiley running through a front yard. He then ran after Smiley. Taylor instructed Smiley to stop, but Smiley did not comply. Taylor eventually caught up to Smiley and grabbed Smiley's jacket. Smiley flung his arm back, causing Taylor to lose his grip. Taylor then said, "stop or I'll tase you." He did not stop, so Taylor tased Smiley. Smiley was handcuffed and brought back to Maines, with four other males, for a cold-stand identification. Maines indicated that three males were involved, one of whom was Smiley.

{¶7} Smiley testified in his own defense. He testified that he went to Maines's house to collect money. Maines told Smiley that he had to take him to get the money. Smiley told Maines that he could not take him because he was not driving. Maines then got into a confrontation with another male, who had the baseball bat. This male hit Maines with the bat. Smiley testified that he stepped away from the confrontation because he is on federal parole.

{¶8} Smiley further testified that he was standing outside the front passenger door of the vehicle, when he saw a police officer. Smiley then ran away from the officer because he had an open traffic warrant. Smiley also testified that he did not have a gun with him that night.

{¶9} At the close of the State's case, Smiley moved for dismissal. The trial court granted Smiley's Crim.R. 29 motion in part, only by deleting the term "dangerous ordnance" from Counts 1 and 4 of the indictment. Smiley renewed his Crim.R. 29 motion at the conclusion of his case. The trial court again partially granted his motion, finding that there was no evidence that Smiley resisted or interfered with the arrest of another as provided in Count 7. The trial court then found Smiley guilty of all charges. For purposes of sentencing, the trial court merged Count 1 (felonious assault) into Count 3 (kidnapping) and merged the one-year firearm specification into the three-year firearm specification. The trial court sentenced Smiley to three years in prison on the firearm specification to be served prior to and consecutive with three years in prison on Count 3 (kidnapping). The trial court sentenced Smiley to three years in prison on Count 4

(having a weapon while under disability) to be served concurrently with Count 3. With respect to Count 7 (resisting arrest), the trial court sentenced Smiley to 90 days in jail, with credit for time served for an aggregate of six years in prison.

{¶10} Smiley now appeals, raising the following three assignments of error for review, which shall be discussed together where appropriate.

## ASSIGNMENT OF ERROR ONE

The trial court erred by considering the testimony of the alleged victim, DeShawn Maines, because he was not competent to testify.

## ASSIGNMENT OF ERROR TWO

The trial court erred when it denied [Smiley's] motion for acquittal under Crim.R. 29 because the State failed to present sufficient evidence to establish beyond a reasonable doubt the elements necessary to support the convictions.

## ASSIGNMENT OF ERROR THREE

[Smiley's] convictions are against the manifest weight of the evidence.

### Witness Competency

{¶11} In the first assignment of error, Smiley argues that the trial court abused its discretion when it failed to determine Maines's competency. During cross-examination, Maines testified that he has been diagnosed with bipolar disorder and schizophrenia. Maines also testified that he hears voices multiple times a day. He further testified that these voices tell him to do things, and he heard voices on the morning of trial. Smiley contends that without Maines's testimony, he could not have been convicted of felonious

assault, kidnapping, and having a weapon while under disability.

**{¶12}** We note that Smiley failed to object to the testimony at trial he now challenges. Therefore, we review the alleged error to determine whether it constitutes plain error. *State v. Grahek*, 8th Dist. No. 81443, 2003-Ohio-2650, ¶ 13. Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

**{¶13}** In *State v. Frazier*, 61 Ohio St.3d 247, 251, 574 N.E.2d 483 (1991), the Ohio Supreme Court stated that the determination of witness competency "is within the sound discretion of the trial judge." "'The trial judge, who saw the [witnesses] and heard their testimony and passed on their competency, was in a far better position to judge their competency than is this court, which only reads their testimony from the record * * *.'" *State v. Bradley*, 42 Ohio St.3d 136, 141, 538 N.E.2d 373 (1989), quoting *Barnett v. State*, 104 Ohio St. 298, 301, 135 N.E. 647 (1922). Accordingly, we review the trial court's decision for an abuse of discretion, which "'implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

**{¶14}** Evid.R. 601(A) provides in relevant part: "Every person is competent to be

a witness except * * * [t]hose of unsound mind * * *, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly."

{¶15} Smiley contends that Maines was incompetent because of his unsound mind. He claims the record does not support the conclusion that Manies was able to appreciate or understand the nature and obligations of his oath or his obligation to be truthful. However, being of unsound mind does not automatically render a witness incompetent to testify. *Bradley*, 42 Ohio St.3d at 140, 538 N.E.2d 373.

{¶16} "'A person, who is able to correctly state matters which have come within his perception with respect to the issues involved and appreciates and understands the nature and obligation of an oath, is a competent witness notwithstanding some unsoundness of mind.'" *Id*. at 140-141, quoting *State v. Wildman*, 145 Ohio St. 379, 61 N.E.2d 790 (1945), paragraph three of the syllabus.

{¶17} Moreover, "competency under Evid.R. 601(A) contemplates several characteristics, which can be broken down into three elements: first, the individual must have the ability to receive accurate impressions of fact; second, the individual must be able to accurately recollect those impressions; third, the individual must be able to relate those impressions truthfully." *Grahek,* 8th Dist. No. 81443, 2003-Ohio-2650, at ¶ 25, citing *State v. Said*, 71 Ohio St.3d 473, 1994-Ohio-402, 644 N.E.2d 337.

{¶18} Here, Maines testified that the voices he hears did not interfere with his ability to recall the events in question. Throughout his testimony, Maines did not waiver

on the fact that Smiley came to collect money from him, and that Smiley held a gun to his chest, instructing him not to move. Moreover, Smiley's testimony eventually confirmed Maines's recount of the events. Smiley's testimony confirmed that: (1) he came over to Maines's house to collect money for a previous drug transaction; (2) Maines needed to go to an ATM to get the money; (3) Maines was hit with a baseball bat by one of the men with Smiley; and (4) Smiley and the group of men left in the same vehicle.

{¶19} Smiley now asks this court to find that Maines demonstrated an inability to be truthful due to incompetency. We decline to do so. The trial court was in a much better position to gauge Maines's understanding of the events and his capacity to testify, and the record supports its determination. Thus, we find that the trial court did not abuse its discretion in allowing Maines to testify. As we find no error, we do not reach a plain error analysis.

{¶20} Accordingly, the first assignment of error is overruled

<u>Sufficiency and Manifest Weight of the Evidence</u>

{¶21} In the second assignment of error, Smiley argues that the State failed to present sufficient evidence to sustain each of his convictions. In the third assignment of error, he further argues that his convictions are against the manifest weight of the evidence.

**{¶22}** The Ohio Supreme Court in *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 113, explained the standard for sufficiency of the evidence as follows:

> Raising the question of whether the evidence is legally sufficient to support the jury verdict as a matter of law invokes a due process concern. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. In reviewing such a challenge, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560."

**{¶23}** With regard to a manifest weight challenge, the Ohio Supreme Court in *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, has stated that the

> reviewing court asks whose evidence is more persuasive — the state's or the defendant's?   * * * "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony."   [*Thompkins* at 387], citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.

**{¶24}** Moreover, an appellate court may not merely substitute its view for that of the jury, but must find that "'in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"   *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily

against the conviction.'" *Id.*, quoting *Martin*.

{¶25} In the instant case, Smiley was convicted of felonious assault under R.C. 2903.11(A)(2), kidnapping under R.C. 2905.01(B)(2), having a weapon while under disability under R.C. 2923.13(A)(3), and resisting arrest under R.C. 2921.33(A).

Felonious Assault

{¶26} Smiley was convicted of felonious assualt under R.C. 2903.11(A)(2), which provides in pertinent part that: "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon * * *." Smiley, relying on *State v. Brooks,* 44 Ohio St.3d 185, 542 N.E.2d 636 (1989), argues that there is no evidence that Smiley intended to cause physical harm with the gun.

{¶27} The Ohio Supreme Court in *Brooks* addressed "whether the pointing of a deadly weapon is an 'attempt to cause physical harm' to another by means of a deadly weapon as encompassed in the definition of 'felonious assault.'" *Id.* at 189. In *Brooks*, the defendant was involved in a "heated conversation" with a barmaid, which resulted in the defendant pointing a handgun at the woman's face and stating, "Bitch, I will kill you." *Id.* at 187. The Ohio Supreme Court upheld Brooks's felonious assault conviction based upon the totality of the circumstances. However, they went on to hold that, "[t]he act of pointing a deadly weapon at another, without additional evidence regarding the actor's intention, is insufficient to convict a defendant of the offense of 'felonious assault' as defined by R.C. 2903.11(A)(2)." *Id.* at syllabus.

{¶28} In *State v. Green*, 58 Ohio St.3d 239, 569 N.E.2d 1038 (1991), the Ohio

Supreme Court reviewed its decision in *Brooks* and explained:

> It can be readily gleaned from our holding in *Brooks* * * * that the additional evidence needed to uphold a felonious assault charge could include verbal threats as perceived by a reasonable person under the circumstances. Thus, the act of pointing a deadly weapon at another coupled with a threat, which indicates an intention to use such weapon, is sufficient evidence to convict a defendant of the offense of "felonious assault" as defined by R.C. 2903.11(A)(2).

*See also* the syllabus.

{¶29} Moreover, this court, relying on *Green* and *Brooks*, has found the act of pointing a gun at the victim and instructing them "not to run or try to move and to be quiet" demonstrates the "intent to cause physical harm by means of a deadly weapon." *State v. McCauley*, 8th Dist. No. 73892 (Apr. 22, 1999), appeal not allowed, 86 Ohio St.3d 1467, 715 N.E.2d 569 (1999). Here, Maines testified that Smiley pointed a gun at his chest and told him "don't move." When viewed in a light most favorable to the State, we find that Smiley's act of pointing the gun at Maines's chest, coupled with his threat, "don't move," constitutes sufficient evidence to convict Smiley of felonious assault.

{¶30} Smiley further argues that there was no evidence to support the firearm specification convictions. Smiley maintains there was no evidence linking Smiley to the gun found in the vehicle, and there was no evidence that the gun was operable or a "firearm" as defined by R.C. 2923.11(B).

{¶31} R.C. 2923.11 defines "deadly weapon" and "firearm" as follows:

(A) "Deadly weapon" means any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon.

(B)(1) "Firearm" means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. "Firearm" includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable.

(2) When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm.

{¶32} The Ohio Supreme Court in addressing whether a firearm specification can be proven beyond a reasonable doubt without presenting evidence as to the operability of the firearm, held:

> In determining whether an individual was in possession of a firearm and whether the firearm was operable or capable of being readily rendered operable at the time of the offense, the trier of fact may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm. *Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541, at paragraph one of the syllabus.

{¶33} Moreover, in *State v. Woodson*, 8th Dist. No. 96538, 2012-Ohio-172, ¶ 24, this court recently upheld defendant's firearm specification convictions, finding that the operability of the weapon may be inferred from the facts and circumstances. In *Woodson*, the firearm was never recovered, but the victims testified that the defendant pointed a black, metal gun at them and told them that "this isn't a joke, [t]his is a robbery." The defendant continued to say, "I'm not joking * * * I'll kill you."

{¶34} Likewise, based on the totality of the circumstances in the instant case, we find that the firearm was operable. Maines clearly testified to Smiley's use of a gun. He testified that Smiley pointed an automatic gun at his chest and told him "don't move."

Maines feared for his life. Thus, it was reasonable for the trier of fact to conclude that Smiley's words and actions were meant to imply that his gun was, in fact, operable.

Having a Weapon While Under Disability

{¶35} Smiley was also convicted of having a weapon while under disability in violation of R.C. 2929.13(A)(3), which provides that: "no person shall knowingly acquire, have, carry, or use any firearm * * *, if * * *[t]he person * * * has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse * * *."

{¶36} Smiley argues that Maines's testimony was insufficient evidence to support his conviction. However, having found that Smiley pointed a gun at Maines and the record demonstrates that Smiley was convicted of drug possession in December 2009, any rational trier of fact could have found the essential elements of this crime proven beyond a reasonable doubt.

Kidnapping

{¶37} Smiley next argues that there is insufficient evidence to sustain his kidnapping conviction under R.C. 2905.01(B)(2), which provides in pertinent part:

> No person, by force, threat, or deception * * * shall knowingly do any of the following, under circumstances that create a substantial risk of serious physical harm to the victim * * * [r]estrain another of the other person's liberty.

{¶38} Smiley contends that there is no evidence that he knowingly placed Maines in a substantial risk of "serious physical harm." We disagree.

{¶39} Here, Maines testified that Smiley pointed a gun at his chest and told him

"don't move."   Maines further testified that he did not feel free to move and that he feared for his life.   Based on this evidence, any rational trier of fact could have found Smiley guilty of kidnapping.

<u>Resisting Arrest</u>

{¶40} Lastly, Smiley was convicted of resisting arrest in violation of R.C. 2921.33(A), which provides in pertinent part that:  "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person * * *."

{¶41} Smiley argues that there is no evidence of him resisting a lawful arrest. Specifically, he argues that when Officer Taylor stopped him, Officer Taylor was not arresting him.   The State, however, presented evidence that when the police encountered Smiley, he ran away.   Officer Mobley asked Smiley twice to show his hands, but instead, Smiley ran away.   Officer Mobley chased after Smiley for about one block, but lost track of him.   Officer Taylor heard the radio assignment for the male who was held at gunpoint and struck with a bat.   He initially went to respond to the call, but received another call that the officers were in foot pursuit.   When he arrived on the scene, he observed Smiley running through a front yard.   He then ran after Smiley.   Taylor instructed Smiley to stop, but Smiley did not comply.   Taylor eventually caught up to Smiley and grabbed Smiley's jacket.   Smiley flung his arm back, causing Taylor to lose his grip.   Taylor said, "stop or I'll tase you."   Smiley did not comply with Taylor's orders, so Taylor tased Smiley.   Taylor then handcuffed Smiley.

{¶42} This evidence, coupled with Smiley's own testimony that he ran away from

Officer Mobley because he had an open traffic warrant, was sufficient evidence that Smiley resisted arrest.

**{¶43}** Based on the foregoing, we find that the State presented sufficient evidence to sustain Smiley's convictions. Furthermore, we cannot say that the trial court clearly lost its way and created such a manifest miscarriage of justice that his convictions must be reversed and a new trial ordered. *Martin,* 20 Ohio App.3d at 175, 485 N.E.2d 717.

**{¶44}** Accordingly, the second and third assignments of error are overruled.

**{¶45}** Judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

MARY J. BOYLE, P.J., and

EILEEN A. GALLAGHER, J., CONCUR