[Cite as *State v. Hall*, 2024-Ohio-2029.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    CASE NO. 1-23-32

    v.

DEVEON L. HALL,

    **O P I N I O N**

    DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR2023 0016

**Judgment Affirmed**

**Date of Decision:  May 28, 2024**

APPEARANCES:

    *Chima Ekeh* **for Appellant**

    *John R. Willamowski, Jr.* **for Appellee**

**GWIN, J.,**

{¶1} Appellant Deveon L Hall appeals from the judgment entry of the Allen County Court of Common Pleas. Appellee is the State of Ohio.

*Facts & Procedural History*

{¶2} On February 16, 2023, appellant was charged with one count of domestic violence, a felony of the fifth degree, in violation of R.C. 2919.25(A) and (D)(5), one count of abduction, a felony of the third degree, in violation of R.C. 2905.02(A)(2) and (C), with a firearm specification, and one count of felonious assault, a felony of the second degree, in violation of R.C. 2903.11(A)(2) and (D)(1)(a), with a firearm specification.

{¶3} The trial court held a jury trial beginning on April 6, 2023.

{¶4} At the time of the incident on January 7, 2023, Angela Roldan was appellant's girlfriend. Roldan described how she and appellant got into an argument on that day because she received a call from her doctor that she tested positive for a sexually transmitted disease. After the argument, appellant left Roldan's apartment. Roldan left her apartment to go to her friend's house, but left her door unlocked so appellant could get some items he left in her apartment.

{¶5} Roldan drank some wine at her friend's house. On her way home, she was stopped by police on suspicion of OVI. The officers released her, and dropped her off at her apartment at approximately 5:00 a.m. When the officers dropped her

off, appellant was at her apartment. Appellant was saying some "offensive words" to Roldan.

{¶6} Roldan was trying to sleep, but appellant was drinking and watching television. Roldan got angry, and punched appellant's television. Appellant then came behind her and punched her in the eye. Roldan pushed appellant away, but appellant grabbed her, smacked her face, and pulled her hair. Roldan tried to leave, but appellant grabbed her, dragged her by her hair, told her to sit down, and told her she "wasn't going nowhere."

{¶7} At that point, appellant went into the closet and got a gun. Appellant cocked the gun back and put it to Roldan's head. Roldan stated the gun was physically touching her head. Appellant was on the phone with his cousin. Roldan testified appellant stated he was "about to crash out," "he was gonna do some dumb shit," and "he had enough money on his bank account for a funeral." Roldan stated appellant had the gun to her head, went back to get his drink, but when she tried to get up, he would put the gun back to her head. When asked what Roldan thought appellant meant by "about to crash out," she stated, "like he was about to shoot me or something." Appellant also pointed the gun to her thigh.

{¶8} When appellant's cousin came over, appellant left the bedroom. Roldan grabbed the gun from the table and threw it out the window. Appellant still would not let her leave, and kept shoving her down when she attempted to leave.

Appellant's cousin left, saying he wanted nothing to do with the situation. Appellant told Roldan to lay down in bed. He asked her where the gun was, and she told him she did not know. At that point, appellant told Roldan the gun was not loaded. He slid the magazine out of his pocket and showed it to her.

{¶9} Appellant placed a chair at the end of the bed and watched Roldan fall asleep. Approximately two hours later, she woke up and found appellant sleeping next to her. Roldan found her phone in appellant's shoe, and texted several people to come get her. As she was leaving, Roldan grabbed the gun from in front of her air conditioner window. She called the police from her friend's home.

{¶10} Officer Blake VanVorce is a police officer with the Lima Police Department. He received a call about an incident at 531 Browder Road. When he found Roldan at another apartment in the complex, she pulled a black handgun out of her purse and handed it to him. VanVorce cleared the gun, making sure there was no magazine or bullet inside of it. There was no magazine in the firearm and no bullet in the chamber of the firearm. He then secured the firearm in the trunk of his cruiser. VanVorce identified Exhibits 4 and 5 as photographs of the firearm he secured on January 7, 2023. It had been rendered safe at the time he took the photographs. The photographs show the gun is a Smith & Wesson SW99. VanVorce also identified Exhibit 3 as the firearm he collected and secured on

January 7, 2023. Counsel for appellee stated that Exhibit 3, the firearm, had been "rendered safe with a zip tie through the barrel."

{¶11} VanVorce testified that appellant would not come out of the apartment when the police arrived. An officer used a crowbar to pry the door open. Some officers went into the apartment, but VanVorce heard a yell, and went to assist another officer who was chasing appellant through the apartment complex. The other officer attempted to tase appellant, but that did not work. VanVorce tackled appellant and arrested him.

{¶12} Angela Khrestian works at the Bureau of Criminal Investigation as a forensic scientist in the DNA section. She conducted an analysis on the firearm in this case. The DNA profile obtained from a swab of the trigger and trigger guard was not sufficient for comparison due to the number of contributors. The DNA swab of the grip showed one major contributor was Roldan. Swabs of the slide and buttons were not sufficient for comparison due to low levels of DNA. The swab of the front sight area detected DNA from both Roldan and appellant.

{¶13} Officer Austin Michel works for the City of Lima Police Department. Michel described how the officers attempted to get appellant to come out of the apartment. Michel remained in the apartment while officers apprehended appellant. Michel transported appellant to the police department. When they got to the station,

it appeared as if appellant had something in his hands. Michel asked appellant to open his hands. When appellant opened his hands, Michel found a live forty round.

{¶14} Officer Kylie Archer with the Lima Police Department was one of the last officers to arrive on the scene. She waited outside in case appellant jumped out the window. Archer observed appellant actually escape out the window, and ran after him. She attempted to use her taser, but the probes landed in appellant's jacket.

{¶15} Officer Roger Lybarger went inside the apartment to look for a gun magazine because Roldan informed the police appellant had the magazine for the gun inside his pocket. Lybarger located a loaded magazine inside a duffle bag in the bedroom closet. Lybarger identified the magazine and forty-caliber rounds. Lybarger took the magazine (Exhibit 18) and placed the magazine into the firearm (Exhibit 3). The magazine fit into the firearm.

{¶16} The parties agreed to the following stipulation: "both parties do stipulate that the firearm in State's Exhibit 3 is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant." Counsel for appellant made a Criminal Rule 29 motion at the conclusion of appellee's case. Counsel renewed the motion at the conclusion of the presentation of the evidence. The trial court overruled the motions.

{¶17} The jury found appellant guilty of domestic violence, felonious assault, and the firearm specification for the felonious assault charge. The jury

found appellant not guilty of the abduction charge. The trial court issued a judgment entry of conviction on April 10, 2023, and set a sentencing hearing for May 19, 2023.

**{¶18}** The trial court held a sentencing hearing on May 19, 2023. On the same day, the court entered a judgment entry of sentencing, sentencing appellant as follows: mandatory 11 months on the domestic violence count; three years (minimum) to four years (maximum) on the felonious assault count; and three years mandatory on the firearm specification, to be served prior to and consecutive to the term imposed for the felonious assault count. The trial court ordered the terms imposed on the domestic violence and felonious assault counts to be served concurrently, for a total aggregate term of seven years (minimum) to nine years (maximum), three years and eleven months of which were mandatory.

**{¶19}** Appellant appeals the May 19, 2023 judgment entry of the Allen County Court of Common Pleas and assigns the following as error:

"I. APPELLANT'S CONVICTION FOR FELONIOUS ASSAULT WAS NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE.

"II. APPELLANT'S CONVICTION FOR FELONIOUS ASSAULT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

"III. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL."

I. & II.

**{¶20}** In appellant's first and second assignments of error, he argues his conviction on the felonious assault count was against the manifest weight and sufficiency of the evidence.

**{¶21}** The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), in which the Ohio Supreme Court held, "an appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

**{¶22}** In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). Reversing a conviction as

being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

**{¶23}** It is well-established, though, that the weight of the evidence and the credibility of the witnesses are determined by the trier of fact. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216. The jury is free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. *Id.*

**{¶24}** At issue in these assignments of error is Count 3 of the indictment, felonious assault. Appellant contends his statements to a third party (his cousin) were not explicit or implicit threats directed at the victim and thus there was not sufficient evidence to demonstrate an attempt to cause the victim physical harm. Appellant also argues there was no overt act directed towards causing the victim physical harm with a firearm and thus his conviction is against the manifest weight and sufficiency of the evidence.

R.C. 2903.11 provides, in pertinent part, as follows:

(A) No person shall knowingly * * * (2) cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance. * * *

(D)(1)(a) Whoever violates this section is guilty of felonious assault

* * *.

**{¶25}** Appellant cites to a line of cases including the *State v. Brooks* case from the Ohio Supreme Court to argue there is not sufficient evidence that appellant intended to cause physical harm with a gun because the act of pointing the gun at the victim, without additional evidence, is insufficient for a felonious assault conviction. *State v. Brooks*, 44 Ohio St.3d 185, 542 N.E.2d 636 (1989). However, subsequent to *Brooks*, the Ohio Supreme Court held that the additional evidence needed to uphold a felonious assault charge can include verbal threats as perceived by a reasonable person under the circumstances, and that the act of pointing a deadly weapon at another coupled with a threat, which indicates an intention to use such weapon, is sufficient to convict a defendant of felonious assault. *State v. Green*, 58 Ohio St.3d 239, 569 N.E.2d 1038 (1991).

**{¶26}** In this case, Roldan testified that when appellant held the gun to her head, he stated she "wasn't going nowhere." *State v. Smiley*, 8th Dist. Cuyahoga No. 97047, 2012-Ohio-1742 (pointing a gun at a victim and instructing them not to run or move demonstrates intent to cause physical harm); *State v. Helms*, 7th Dist. Mahoning No. 08 MA 199, 2012-Ohio-1147 (pointing a weapon at a victim combined with a general threat is sufficient to establish the necessary intent to commit felonious assault). Roldan also testified that anytime she attempted to get

up or leave, appellant grabbed her or dragged her by her hair, told her to sit down, and pointed the gun at either her head or thigh. Further, Roldan testified that, while appellant was holding the gun to her head, he was talking to is cousin and stated he "was gonna do some dumb shit" and "he had enough money on his bank account for a funeral." This evidence demonstrates appellant pointed the deadly weapon at the victim and there was a threat that indicated the intent to use such a weapon.

{¶27} Appellant also contends he took no overt act towards causing the victim physical harm with a firearm because the gun was unloaded. However, Roldan's testimony is that appellant did not tell her the gun was unloaded until after he held the gun to her head and threatened her. Further, Roldan testified appellant had the magazine and bullets in his pocket. The jury, as the trier of fact, was free to accept or reject any or all of the evidence offered by the parties and assess the witness's credibility. *State v. Johnson*, 5th Dist. Stark No. 2014CA00189, 2015-Ohio-3113, citing *State v. Nivens*, 10th Dist. Franklin No. 95AP09-1236, 1996 WL 284714 (May 28, 1996). The Ohio Supreme Court has held that pointing an unloaded firearm at a victim, even if the offender does not pull the trigger and is aware the weapon is unloaded, is sufficient to sustain a felonious assault with a deadly weapon conviction pursuant to R.C. 2903.11(A)(1). *State v. Tate*, 54 Ohio St.2d 444, 377 N.E.2d 778 (1978).

{¶28} Finally, appellant contends his conviction for felonious assault is against the manifest weight and sufficiency of the evidence because there was no evidence the firearm was operable. We first note that counsel for appellant stipulated to the operability of the firearm. As to appellant's argument that when the gun was entered into evidence it was zip-tied and thus inoperable, both counsel for appellee and Officer VanVorce specifically testified that the zip-tie was placed through the barrel of the gun to render the gun safe to be entered into evidence at trial.

{¶29} When viewed in a light most favorable to appellee, we find appellant's act of pointing the gun at the victim's head, coupled with the threats of she "wasn't going nowhere," he was "about to crash out," and "he had enough money on his bank account for a funeral" constitutes sufficient evidence to convict appellant of felonious assault.

{¶30} Having reviewed the entire record, weighing the evidence and all reasonable inferences and making the considerations set forth above, we do not find the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

{¶31} The jury verdict finding appellant guilty of felonious assault was not against the manifest weight or sufficiency of the evidence. Appellant's first and second assignments of error are overruled.

III.

**{¶32}** In his third assignment of error, appellant contends he was denied effective assistance of counsel because trial counsel stipulated the firearm in State's Exhibit 3 was capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant.

**{¶33}** "Under Ohio law, 'a properly licensed attorney is presumed to carry out his duties in a competent manner.'" *State v. Gee*, 3rd Dist. Putnam No. 12-92-9, 1993 WL 270995 (July 22, 1993). For this reason, the appellant "has the burden of proving that he or she was denied the right to effective assistance of counsel." *State v. Cartlidge*, 3rd Dist. Seneca No. 13-19-44, 2020-Ohio-3615. "In order to prove an ineffective assistance of counsel claim, the appellant must carry the burden of establishing (1) that his or her counsel's performance was deficient and (2) that this deficient performance prejudiced the defendant." *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**{¶34}** In order to establish deficient performance, appellant must demonstrate that trial "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *State v. Howton*, 3rd Dist. Allen No. 1-16-35, 2017-Ohio-4349, quoting *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "[D]ebatable trial tactics do not establish ineffective assistance of counsel." *State v. Queen*, 3rd

Dist. Logan No. 8-19-41, 2020-Ohio-618, quoting *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810. Further, "[t]actical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance." *State v. Harrison*, 3rd Dist. Logan No. 8-14-16, 2015-Ohio-1419.

{¶35} A trial attorney is not required to "raise meritless issues or even all arguably meritorious issues." *State v. Mayse*, 3rd Dist. Marion No. 9-16-50, 2017-Ohio-1483. Thus, as a general matter, "[d]efense counsel's decision to stipulate to evidence in a case is a tactical decision." *State v. Townsend*, 9th Dist. Summit No. 23397, 2007-Ohio-4421. "Moreover, counsel is not deficient by stipulating to facts for which there is ample evidence, or to evidence that is 'unassailable.'" *State v. Mackey*, 12th Dist. Warren No. CA99-06-065, 2000 WL 190033 (Feb. 14, 2000).

{¶36} "In order to establish prejudice, 'the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.'" *State v. Berry*, 3rd Dist. Union No. 14-20-05, 2021-Ohio-1132, quoting *State v. Bibbs*, 3rd Dist. Hancock No. 5-16-11, 2016-Ohio-8396. "If the appellant does not establish one of these two prongs, the appellate court does not need to consider the facts of the case under the other prong of the test." *State v. Gear*, 3rd Dist. Van Wert No. 15-22-03, 2023-Ohio-1246.

{¶37} Appellant argues his trial counsel was ineffective in stipulating to the operability of the firearm because there was no direct evidence establishing the gun

appellant held to Roldan's head was operable, and circumstantial evidence of operability was speculative.

**{¶38}** The term "firearm" is defined as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant." R.C. 2923.11(B)(1). That term "includes an unloaded firearm, and any firearm that is inoperable but that can be readily be rendered operable." *Id.*

**{¶39}** As to appellant's argument regarding the lack of direct evidence of operability of the firearm, circumstantial evidence may be used to "prove that the firearm existed and that it was operable at the time of the offense." *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997); *State v. Elliott*, 3rd Dist. Logan No. 8-21-35, 2022-Ohio-3778; *State v. Knight*, 2nd Dist. Greene No. 2003 CA 14, 2004-Ohio-1941 (operability may be inferred from the facts and circumstances); *State v. Pope*, 1st Dist. Hamilton No. C-180587, 2019-Ohio-3599 (operability may be established by circumstantial evidence). Accordingly, the State was not required to provide direct evidence of operability.

**{¶40}** The State may establish that a firearm was operable or capable of being readilty rendered operable "by the testimony of lay witnesses who were in a position to observe the instrument and circumstances surrounding the crime." *In re C.M.*, 3rd Dist. Allen No. 1-21-31, 2022-Ohio-240. Roldan testified the gun was

physically touching her head multiple times. Officer VanVorce testified he obtained the gun from Roldan at the scene, cleared the gun, and secured the gun in the trunk of his cruiser. He identified the gun during trial. Officer Michel stated appellant had a live forty round in his hand at the police station. Officer Lybarger testified he found a loaded magazine in the bedroom closet. Lybarger demonstrated at trial that the magazine fit into the gun VanVorce identified. This testimony demonstrated the gun was operable or could readily have been rendered operable at the time of the offense.

{¶41} Further, in determining whether a firearm is operable, the trier of fact may "rely upon * * * the representations and actions of the individual exercising control over the firearm," including "explicit or implicit threats made by the person in control of the firearm." *State v. Elliott*, 3rd Dist. Logan No. 8-21-35, 2022-Ohio-3779. "Where an individual brandishes a gun and implicitly but not expressly threatens to discharge the firearm at the time of the offense, the threat can be sufficient to satisfy the state's burden of proving that the firearm was operable or capable of being readily rendered operable." *Id., citing Thomkins*, 78 Ohio St.3d at 384. This Court has previously held that the act of holding a gun to the victim's head is evidence of operability. *State v. Elliott*, 3rd Dist. Logan No. 8-21-35, 2022-Ohio-3779. Here, appellant held the gun to the victim's head multiple times, and stated he was "about to crash out" and had enough money in his bank account for a

funeral. Appellant was acting in a manner that suggested the gun was operable at the time.

{¶42} In his argument, appellant also cites the testimony during trial that the gun was not operable due to a zip-tie through the barrel of the gun. However, both counsel for appellee and Office VanVorce specifically testified that the zip-tie was placed through the barrel of the gun to render the gun safe for trial.

{¶43} Given this context, we conclude the decision to make the stipulation falls squarely within the realm of debatable trial tactics and strategies. This decision does not constitute deficient performance. Appellant has failed to carry the burden of establishing an ineffective assistance of counsel claim. Appellant's third assignment of error is overruled.

{¶44} Based on the foregoing, appellant's assignments of error are overruled. The judgment entry of the Allen County Court of Common Pleas is affirmed.

*Judgement Affirmed*

**ZIMMERMAN and MILLER, J.J., concur.**

**\*\*Judge W. Scott Gwin of the Fifth District Court of Appeals, sitting by Assignment of the Chief Justice of the Supreme Court of Ohio.**