[Cite as *State v. Pennington*, 2017-Ohio-1423.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J.<br>Hon. John W. Wise, J.<br>Hon. Craig R. Baldwin, J. |
| Plaintiff-Appellee | |
| -vs- | Case No. 16CA14 |
| BRENDAN RIDGE PENNINGTON | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING: Appeal from Guernsey County Common
Pleas Court, Case No. 15CR108

JUDGMENT: Affirmed, in part, Vacated, in part, and
Remanded

DATE OF JUDGMENT ENTRY: April 17, 2017

APPEARANCES:

For Plaintiff-Appellee

JASON R. FARLEY
Assistant Guernsey County
Prosecuting Attorney
145 N. 7th Street
Cambridge, Ohio 43725

For Defendant-Appellant

VALERIE KUNZE
Assistant State Public Defender
250 E. Broad St., Ste 1400
Columbus, Ohio 43215

*Hoffman, P.J.*

{¶1}    Defendant-appellant Brendan Ridge Pennington appeals his conviction and sentence entered by the Guernsey County Court of Common Pleas on one count of felonious assault, in violation of R.C. 2903.11(A)(1). Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2}    On May 9, 2015, Appellant and his girlfriend S.S. were out driving when an argument ensued. The argument turned physical.

{¶3}    Following the argument, S.S. went to the emergency room for treatment. As a result of the incident, S.S. suffered bruising, red marks and had hair removed from her head in patches. S.S. later required treatment for hearing loss, nerve damage to her ear and breathing issues caused by the altercation.

{¶4}    On May 11, 2015, S.S. spoke with Lieutenant Sam Williams of the Guernsey County Sheriff's Department. Lieutenant Williams noticed S.S. had hair missing, swelling, bruising, redness and abrasions. While at the Sheriff's Department, S.S. called Appellant to discuss their injuries on speakerphone.

{¶5}    On May 12, 2015, Lieutenant Williams spoke with Appellant, who described his injuries as a cut to his lower left lip, bruising, scratching, and redness to the chest.

{¶6}    At trial, S.S. testified the two were driving in the car when Appellant asked her who she was texting, becoming "accusatory." Appellant hit S.S.'s hand, and hit S.S. in the face with her purse. Appellant told S.S., if she didn't unlock her phone, she was "going to get it." Tr. at 244. Appellant then grabbed S.S. by the hair, jerking her toward him.  S.S. tried to leave the car, but Appellant grabbed her and pulled her back inside. Appellant then punched her in the side of the head, grabbing her hair again.  Tr. at 248.

The two drove in the car for two hours arguing. Appellant held S.S.'s head and hair, jerking her head back and forth. S.S. testified Appellant had his arms around her neck, threatening her.

{¶7} S.S. maintains Appellant eventually drove to his mother's house.[1] S.S. claims Appellant pulled her out of the car and took her to the back of the property to an older truck. Inside the truck, Appellant continued to hit S.S. in the back and side of her head. Tr. at 253. Appellant threatened S.S. and punched her in the nose and eye. Tr. at 253. Appellant then choked S.S. until she blacked out. Tr. at 258.

{¶8} Appellant and S.S. returned to her car, driving to a Duke and Dutchess gas station, where Appellant purchased gas. Appellant then drove S.S. to his father's house, and took S.S. to a barn, where he forced her to have sex with him.[2] At 8:30 a.m., Appellant took her to a pond, threatening to drown her. They both then walked away, and got into the car together.

{¶9} On May 12, 2015, Appellant spoke to Lieutenant Williams and Deputy Coulter. The interview was introduced at trial as separate exhibits.[3] Appellant claimed S.S. hit him in the face, injuring his lip. Appellant maintains the two were arguing over text messages from other girls to his phone and S.S. was "screaming and hollering," grabbing his phone in a "pissing match." Appellant maintains S.S. then hit him in the side. He maintains they both "latched" on to one another, and flung each other around during the

---

[1] Appellant's statement to law enforcement claims S.S. drove her own car during the incident.

[2] Testimony at trial established Appellant's father owned the barn, and Appellant's mother and father did not live at the same residence. Tr. at 236.

[3] State's Exhibit M2 provides a transcript of the statement, while State's Exhibit M1 is a video recording of the interview.

altercation. Appellant testified S.S. hit him in the ribs "a couple of times." S.S. open hand smacked him a couple of times, but Appellant claimed "it was nothing major." Appellant stated,

> …she kind of got pissed and I got pissed and we both was grabbing a hold of each other and flinging each other around and she hit me in the ribs a couple of times and it was kind of just like a big, slapping pulling… * * *  it was all hand smacks, pulling, jerking each other, pulling each other away like we was on the ground so she would pull on me and I would kick her away and then she would do the same thing to me, grab a hold of me and stuff.
>
> Statement p. 11.

{¶10} Appellant explained they went to his father's barn, engaging in consensual sex, and calming down.   The next day, the parties drove to Seneca Lake and eventually back to his mom's house.  Appellant admits he was distraught at the lake, and S.S. tried to calm him down.

{¶11} As a result of the incident, the Guernsey County Grand Jury indicted Appellant on one count of kidnapping, a first degree felony, in violation of R.C. 2905.01; one count of rape, a first degree felony, in violation of R.C. 2907.02(A)(1)(c) and (A)(2); and felonious assault, a second degree felony, in violation of R.C. 2903.11(A)(1).

{¶12} Following a jury trial, Appellant was convicted of the charge of felonious assault, and acquitted on the charges of rape and kidnapping. The trial court sentenced Appellant to the maximum term of eight years in prison.

{¶13} Appellant appeals, assigning as error:

I. THE TRIAL COURT VIOLATED MR. PENNINGTON'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN IT FAILED TO GIVE A JURY INSTRUCTION AS TO THE INFERIOR-DEGREE OFFENSE OF AGGRAVATED ASSAULT. FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16, OF THE OHIO CONSTITUTION; CRIM. R. 52(B); T. pp. 533-554.

II. THE TRIAL COURT DID NOT IMPOSE COURT COSTS IN OPEN COURT.

I.

{¶14} At trial, Appellant's counsel requested a jury instruction on the inferior degree offense of aggravated assault. The trial court denied the request. In the first assignment of error, Appellant argues the trial court erred in failing to instruct the jury as to the inferior degree offense of aggravated assault.

{¶15} A trial court is required to instruct a jury on a lesser-included offense, where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser-included offense. *State v. Thomas,* 40 Ohio St.3d 213, 533 N.E.2d 286 (1988).

{¶16} In *State v. Deanda*, 136 Ohio St.3d 18, 989 N.E.2 986, 2013-Ohio-1722, the Ohio Supreme Court stated,

The question of whether a particular offense should be submitted to the finder of fact as a lesser included offense involves a two-tiered analysis. *State v. Evans,* 122 Ohio St.3d 381, 2009-Ohio-2974, 911 N.E.2d 889, ¶ 13. The first tier, also called the "statutory-elements step," is a purely legal question, wherein we determine whether one offense is generally a lesser included offense of the charged offense. *State v. Kidder,* 32 Ohio St.3d 279, 281, 513 N.E.2d 311 (1987). The second tier looks to the evidence in a particular case and determines whether "'a jury could reasonably find the defendant not guilty of the charged offense, but could convict the defendant of the lesser included offense.' " *Evans* at ¶ 13, quoting *Shaker Hts. v. Mosely,* 113 Ohio St.3d 329, 2007-Ohio-2072, 865 N.E.2d 859, ¶ 11. Only in the second tier of the analysis do the facts of a particular case become relevant.

When a defendant presents sufficient evidence of serious provocation, "an instruction on aggravated assault must be given." Serious provocation "must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force." *Deem* [citation omitted]. The trial court must consider "the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time."

**{¶17}** An offense is an "inferior degree" of the indicted offense where its elements are identical to or contained within the indicted offense, except for one or more additional mitigating elements which will generally be presented in the defendant's case. *State v. Deem*, 40 Ohio St. 3d 205, 209, 533 N.E.2d 294, 298 (1988).

**{¶18}** Aggravated assault is an inferior-degree offense of felonious assault as the two offenses share identical elements with the exception of aggravated assault including an additional mitigating element of serious provocation. *State v. Combs,* 2001CA00222, 2002-Ohio-1136, citing *Deem*, supra. If a defendant is charged with felonious assault, and presents sufficient evidence of serious provocation, the defendant is entitled to an instruction on aggravated assault. *Id.* at paragraph four of the syllabus. To be serious, the provocation must bring on extreme stress and be reasonably sufficient to incite the defendant into using deadly force. *Id.* at paragraph 5 of the syllabus. In the instant case, we find Appellant failed to provide sufficient evidence of serious provocation to support an instruction on aggravated assault.

**{¶19}** Appellant maintains S.S. hitting him in the lip caused serious provocation and a fit of rage. Appellant concedes the fight was mutual, with both parties causing harm to each other. In his statement to law enforcement introduced at trial, Appellant denied excessive physical force, describing the altercation as latching on to each other and a brawl on the ground, dismissing the incident as a "stupid ass brawl." Appellant stated to law enforcement,

Well I mean yeah when we was on the ground and that she was all over me doing that shit, because she is a scrapper she rides a fucking Harley and shit you know what I mean, she is a scrapper. *** She hits me like a dude. But when we was on the ground I did grab her hair, and turn her face and everything away from me. That was the only hair pulling there was, during the altercation. There was no crazy ass like I snatched a hold of you and fucking ripped your hair out or stuff like that.

Appellant Statement Exhibit M2 at p. 14.

{¶20} We find Appellant did not present sufficient evidence of serious provocation resulting in extreme stress or reasonably sufficient to incite him to use deadly force. The trial court did not err in failing to instruct the jury on aggravated assault.

{¶21} The first assignment of error is overruled.

II.

{¶22} In the second assignment of error, Appellant asserts the trial court erred in imposing costs.

{¶23} The trial court conducted a sentencing hearing and entered sentence via Judgment Entry on June 28, 2016. The trial court did not mention costs or fines during the sentencing hearing.

{¶24} The trial court's June 28, 2016 Judgment Entry of Sentence reads, in pertinent part,

4. Court costs of this case are assessed to the Defendant pursuant to Revised Code Section 2947.23, for which judgment plus interest at the legal rate is GRANTED to the Clerk of Courts. Collection of said Court costs is ORDERED DEFERRED pending Defendant's release from incarceration, at which time he is ORDERED to contact the Clerk of Courts to make arrangements for payment of the Court costs of this case. Defendant was *notified in open Court of both* of the following:

i. If Defendant fails to pay the judgment for Court costs or fails to make timely payments under payment schedule approved by the Court, the Court may Order the Defendant to perform community service work in an amount of not more than 40 hours per month until the judgment is paid or until the Court is satisfied the Defendant is in compliance with the approved payment schedule; and

ii. If the Court Orders the Defendant to perform community service work, the Defendant will receive credit upon the judgment at the federal minimum wage per hour of community service work performed and each hour of community service performed will reduce the judgment by that amount.

(Emphasis added).

**{¶25}** The trial court assessed $8,825.23 in costs on June 29, 2016.

**{¶26}** Here, the State concedes the trial court did not mention or inform Appellant of the imposition of court costs at the sentencing hearing. In *State v. Joseph,* 125 Ohio St.3d 76, 2010–Ohio–954, 926 N.E.2d 278, the Supreme Court held it is reversible error under Crim.R. 43(A) for a trial court to impose costs in its sentencing entry when it did not impose those costs in open court at the sentencing hearing. Id.

**{¶27}** The Court reasoned the defendant was denied the opportunity to claim indigence and to seek a waiver of the payment of court costs before the trial court because the trial court did not mention costs at the sentencing hearing. Id. The same is true in the instant case. Here, appellant was not given an opportunity at the sentencing hearing to seek a waiver of the payment of costs, because the trial court did not mention costs at the sentencing hearing. *Joseph,* 2010–Ohio–954 at ¶ 13. We thus vacate the order to pay costs, and remand the matter to the trial court for the limited purpose of resentencing regarding court costs.

**{¶28}** The second assignment of error is sustained.

{¶29}  The judgment entered by the Guernsey County Court of Common Pleas is affirmed, in part, vacated, in part, and remanded for further proceedings in accordance with the law and this Opinion.

By: Hoffman, P.J.

Wise, John, J.  and

Baldwin, J. concur