[Cite as *State v. Howton*, 2017-Ohio-4349.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    CASE NO. 1-16-35

v.

BROOKS D. HOWTON,              O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR 2015 0300

Judgment Affirmed

Date of Decision:  June 19, 2017

APPEARANCES:

    *Allen Vender* for Appellant

    *Terri L. Kohlrieser* for Appellee

**WILLAMOWKSI, J.**

{¶1} Defendant-appellant Brooks D. Howton ("Howton") appeals the judgment of the Allen County Court of Common Pleas, alleging (1) that the trial court erred in finding that the offenses of rape and kidnapping in this case were not allied offenses subject to merger, (2) that the trial court erred in allowing the State to call rebuttal witnesses who were not disclosed before trial, and (3) that he received ineffective assistance of counsel at trial. For the reasons set forth below, the judgment of the lower court is affirmed.

*Facts and Procedural History*

{¶2} On August 7, 2015, AD woke up at 7:28 a.m. to the sound of Howton knocking on her bedroom window. Doc. 144 at 200. Though AD lived with her mother, Darcie Simpson ("Simpson"), AD was alone in her house on this morning because Simpson was away at work. *Id.* At this time, AD and Howton were dating and had a sexual relationship. *Id.* at 199. Howton occasionally stayed overnight at Simpson's house in AD's room, but he did not live there. *Id.* at 203. From outside the window, Howton asked AD to let him inside the house, and she promptly unlocked her door and let him in the house. *Id.*

{¶3} Once he was inside, AD began to walk towards her bedroom because she wanted to go back to sleep. *Id.* at 272. She did not invite Howton to come with her into the bedroom. *Id.* As she was walking, Howton began questioning her about why she did not answer her phone when he had called her earlier. *Id.* at

273. He then questioned her about whether she was communicating with other men and wanted to check her phone. *Id.* at 274. AD did not allow him to go through her phone, left the room, entered the kitchen, and began doing dishes. *Id.* at 278. Howton followed AD into the kitchen and "kept bumping into [her]" from behind before he "bear hugged [her]." *Id.* at 279. At this point, AD pushed him away from her, told him to "leave [her] alone," and walked back into the living room. *Id.* at 283-284, 287. Howton then followed AD into the living room and sat on AD's lap. *Id.* at 287. At this point, Howton grabbed AD by her wrists, pulled her up from where she was sitting, and began pushing her through the house towards the bedroom. *Id.* at 289.

{¶4} Once they reached the bedroom, Howton pushed AD onto the bed, began to undress her, and took off all of her clothing. *Id.* at 206. While he was holding her down on the bed, he grabbed a vibrator that was in the bedroom and forcibly thrust it into AD's vaginal cavity, pushing so hard that AD "jumped." *Id.* at 208-209. After this, Howton asked AD to perform fellatio on him. *Id.* at 209-210. When AD refused, he accused her of engaging in such activity with other men. *Id.* at 210. AD then struck him with her fist in an attempt to get him off of her. *Id.* at 211. In response, Howton put his arm around AD's neck and began to choke her. *Id.* AD struggled against Howton until she passed out. *Id.* at 212. When she regained consciousness, Howton then picked AD up by her neck, lifted her up, and choked her again until she lost consciousness a second time. *Id.* at

-3-

213. When AD regained consciousness this time, she was on the floor beside the bed; her nose was bleeding; and she was out of breath. *Id.* She begged Howton to let her get her inhaler from her purse, but he did not allow her to do so and began slapping her. *Id.* at 213-214. AD's nose continued to bleed, and she reached for a tee shirt to wipe the blood from her face. *Id.*

{¶5} At this point, Howton said, "I'm going to leave 'cause I know you're going to call the police on me." *Id.* at 302. As he was leaving, however, he noticed that some blood had gotten on his shoes. *Id.* at 302-303. Howton then ordered AD to start the washing machine to remove traces of the blood from the bedding and his shoes. *Id.* at 215-216, 306. After the washing machine had been started, Howton began apologizing to AD and asked her to come into the living room with him. *Id.* at 308. Once they were in the living room, AD sat down on the floor and said, "I don't want you touching me. * * * I want to be by myself. I don't want to do anything with you." *Id.* at 310. Howton then spread out a comforter on the floor of the living room and told AD to lay down with him on the comforter. *Id.* at 218, 310. When AD refused, Howton began undressing AD, put his arm around her, and pulled her to the floor. *Id.* at 219. During his testimony, Howton estimated that the time period between their struggle in the bedroom and this interaction in the living room could have been up to an hour. Doc. 145 at 597. During this process, AD was crying, and Howton told her to stop sobbing. Doc.

144 at 218-219. Howton then performed oral sex on her and then engaged in phallic penetration of her vaginal cavity. *Id*. at 219-220, 313.

{¶6} About ten minutes later, Howton fell asleep. *Id*. at 315. AD then sat up, which awakened Howton. He said, "[N]o, lay back down; lay back down." *Id*. at 315. AD said, in response, "I got to pee." *Id*. AD then went into the restroom, locked the door, and climbed out of the bathroom window. *Id*. at 316. She then went to a neighbor's house and called for help. *Id*. at 328. When the police arrived, AD told them that Howton was in her house. *Id*. at 332. The police knocked on the front door of AD's house, which was locked, and requested entry, but no one answered. Doc. 143 at 151. In between 11:00 and 11:30 that morning, Simpson, who was at work, was contacted by her sister over the phone and told what had happened to AD. *Id*. at 186. Simpson drove home and gave the police a key to the house. *Id*. at 189. The police were then able to gain entry into the house, found Howton in AD's bedroom, and arrested him without incident. *Id*. at 155-156. Doc. 144 at 335.

{¶7} On September 17, 2015, Howton was charged with one count of aggravated burglary in violation of R.C. 2911.11(A)(1), 2911.11(B); one count of kidnapping in violation of R.C. 2905.01(A)(4), 2905.01(C)(1); one count of felonious assault in violation of R.C. 2903.11(A)(1), 2903.11(D)(1)(a); two counts of rape in violation of R.C. 2907.02(A)(2), 2907.02(B); and one count of tampering with evidence in violation of R.C. 2921.12(A)(1), 2921.12(B). Doc. 3.

The sixth count, which charged Howton with tampering with evidence, was later dismissed on the motion of the prosecution. Doc. 143 at 1.

{¶8} The trial occurred in between April 26, 2016, and May 3, 2016. During trial, Howton chose to testify as part of the Defense's case-in-chief. Doc. 145 at 559. In his testimony, Howton claimed that the sexual encounters between him and AD were consensual. *Id*. at 576-577. He alleged that, during one of these encounters in the bedroom, AD indicated to him that she wanted him to stop. *Id*. at 583. He claimed that he, in response, stopped and, admitting that he was "lightweight intoxicated," began to taunt her mildly. *Id*. at 583-584. He then testified that AD hit him in the face but admitted that he choked her as retaliation before pushing her onto the bed and smacking her several times. *Id*. at 588.

{¶9} In reference to this altercation, the following exchange took place between Howton's defense counsel and Howton at trial.

> **Q. Okay. Did everything stop as far as any sort of her trying to come at you or anything? Did that all stop?**
>
> **A. After her nose started bleeding she sat on the bed. The bed had a couple of blood drops on it, which is her bed, closer to the south most part of the house.**
>
> **Q. Okay.**
>
> **A. Okay. She sat on the bed. She cried a little bit. I talked to her to let her know that I was tired of her putting her hands on me and stuff. She stayed in there for a little bit. Like I said, I told her I was about to leave because I felt like she made me, she forced this on herself.**

**Q. Okay.**

**A.  I felt like she made me get out of *my character* and, you know, put my hands on her after she put her hands on me first.**

(Emphasis added.) *Id*. at 593-594.  Howton testified on direct examination that he

apologized to AD.  He described this conversation at trial, saying,

**A.  But I was also explaining to her that over and over and over we had had this type of situation.**

**Q. Okay.**

**A. Which ultimately I'm the one always getting hit.  I'm always getting—I'm the one always getting smacked.  I'm the one always getting punched.  I mean—so this—it wasn't—I don't think it was avoidable, but I started letting her know, like, you know, 'I'm sorry for doing that, but I told you that you needed to stop.'**

**Q.  Now, why do you think—why do you think it should have been avoidable?  Do you mean on your part?**

**A. Yea, it should have been avoidable on my part because, like my family said, man, you know, I complained about this the whole time.  I should have done left.**

**Q.  Should you have had more self-control even though you were getting hit?**

**A.  Yea, I should have had more self-control because I'm a man and, you know, *I don't feel like it's right for a man to hit a woman*. But—**

**Q.  Is that why you were apologizing?**

**A.  Yes, sir.**

(Emphasis added.) *Id*. at 596-597. Howton then alleged that they had consensual "make-up sex" in the living room after his apology. *Id*. at 598. Howton's defense counsel then began questioning Howton about the subsequent police investigation.

> **Q. Okay. Well, when you were talking to Detective Neidemire, again, you were asking about this rape/burglary thing?**
>
> **A. Yes, sir.**
>
> **Q. Did you keep telling him that you didn't rape anybody?**
>
> **A. I always told him that I didn't. *I ain't never been known to be no person like that*.**

(Emphasis added.) *Id*. at 610.

{¶10} After these exchanges between Howton and his defense counsel on direct examination on April 28, 2016, the State stated the following on the record:

> **[I]n light of the defendant talking about character and things of that nature, his own character, the State is intending to introduce some things which pursuant to 404(B) we need to put Mr. Chamberlain on notice of. But, like I said, there's a lot of things in the works. I've got people out investigating a couple of things right now as we speak. The first thing tomorrow morning, or even tonight, I could possibly e-mail Mr. Chamberlain to give him more precise information as to what I'm talking about.**

*Id*. at 617. After conducting further investigation that evening, the prosecutor emailed defense counsel the names of two witnesses that the State intended to call for the purpose of rebutting Howton's statements about these offenses being inconsistent with his good character. *Id*. at 620-622, 625.

{¶11} While the State had the name of one of these witnesses—SS—for two or three weeks prior to trial, the prosecutor informed the court that she, based upon her experience, did not anticipate that Howton would, even if he chose to testify, make statements that would make his character an issue. *Id.* at 622. SS's name had been disclosed to defense counsel orally, but SS's name was not in the list of witnesses that the State planned on calling to testify. *Id.* at 637. The prosecutor only became aware of the other witness—AH—during the course of the trial. *Id.* at 652-653. Doc. 105. On April 29, 2016, the court determined that, on direct examination, Howton had 'opened the door' to character evidence being presented on rebuttal and found that the prosecutor had not committed a Crim.R. 16 violation in failing to disclose the names of SS and AH prior to trial. *Id.* at 657-658. Further, the trial court also granted defense counsel's request for a continuance, giving Howton's counsel the weekend to prepare for the rebuttal testimony of SS and AH. *Id.* at 647-648. On May 2, 2016, the State called SS and AH as rebuttal witnesses. Doc. 146 at 704, 713.

{¶12} On May 3, 2016, the jury found Howton guilty of one count of aggravated burglary, one count of kidnapping, one count of felonious assault, and one count of rape. Doc. 114. The jurors could not come to an agreement on the fourth count charged in the indictment, which was the first of the two counts of rape. Doc. 147 at 881. Thus, the jurors could not come to an agreement as to whether Howton committed the offense of rape in the bedroom as alleged by the

State in the fourth count of the indictment but found that Howton was guilty of committing the offense of rape in the living room as alleged by the State in the fifth count of the indictment. Doc. 112. Doc. 89. The trial judge declared a mistrial only as to the fourth count charged in the indictment. Doc. 147 at 882. On June 13, 2016, the trial judge sentenced Howton and found that none of the offenses in which Howton was convicted were subject to merger. Doc. 126 at 22-23. Howton filed notice of appeal on July 8, 2016. Doc. 130. On appeal, he raises the following three assignments of error.

### First Assignment of Error

**The trial court erred in sentencing Howton, when it determined that rape and kidnapping were not allied offenses.**

### Second Assignment of Error

**The trial court abused its discretion when it permitted the State to call rebuttal witnesses that it did not disclose before trial but it reasonably anticipated, and allowed the state to impermissibly present evidence of other acts by the defendant through those rebuttal witnesses.**

### Third Assignment of Error

**Howton received ineffective assistance of counsel when his attorney failed to request a jury instruction for aggravated assault.**

We will consider these three assignments of error in the order in which they appear in the appellant's brief.

*First Assignment of Error*

**{¶13}** Howton argues that the offense of kidnapping was incidental to the offense of rape in this case because his "conduct restraining [AD was] for the purpose of engaging in sexual activity * * *." Appellant's Brief, 8. He argues that these two crimes were allied offenses of similar import that should have been merged at sentencing because the offense of kidnapping was committed with the same conduct as the rape, resulted in the same type of harm to the victim, and was undertaken with the same animus. For these reasons, he requests that this court reverse his convictions and remand this case for resentencing.

Legal Standard

**{¶14}** R.C. 2941.25 codifies certain protections of the Double Jeopardy Clauses of the United States Constitution and the Ohio Constitution by prohibiting a defendant from being convicted multiple times for the same conduct. *State v. Sergent*, 148 Ohio St.3d 94, 2016-Ohio-2696, 69 N.E.3d 627, ¶ 28, citing *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 27. Under R.C. 2941.25,

> **(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.**
>
> **(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment**

> **or information may contain counts for all such offenses, and the defendant may be convicted of all of them.**

R.C. 2941.25(A), (B).

> **[I]f a defendant is charged with allied offenses—which are multiple crimes committed with the same conduct—the 'trial court is required to merge [these offenses] at sentencing.' To determine 'whether two offenses are * * * subject to merger under R.C. 2941.25, the conduct of the accused must be considered.'**

(Citations omitted.) *State v. Brentlinger*, 3d Dist. Allen No. 1-16-23, 2017-Ohio-2588, ¶ 27.

{¶15} However, multiple convictions are permitted "if we answer affirmatively to just one of the following three questions: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separate[ly]? And (3) Were they committed with a separate animus or motivation." *State v. Potts*, 3d Dist. Hancock No. 5-16-03, 2016-Ohio-5555, ¶ 96, quoting *State v. Bailey*, 1st Dist. Hamilton No. C-140129, 2015-Ohio-2997, ¶ 76. The question of whether offenses are allied offenses of similar import subject to merger is reviewed under a de novo standard. *State v. Brown*, 3d Dist. Allen No. 1-10-31, 2011-Ohio-1461, ¶ 36.

Legal Analysis

{¶16} In this case, the crimes of rape and kidnapping were not allied offenses of similar import because these crimes were committed separately. Howton was at AD's home from 7:28 a.m. until in between 11:00 and 11:30 a.m.

-12-

Doc. 144 at 186, 200. In this time period, AD testified that Howton raped her twice at two different times and in two different rooms. The first alleged rape occurred in AD's bedroom. Howton pushed AD from the living room to the bedroom, held her down, spread her legs apart forcibly, and choked her until she passed out. Though the jurors did not find him guilty of committing the crime of rape in the bedroom—as alleged by the prosecution—the jury did find Howton guilty of the offense kidnapping for these actions. The kidnapping offense, which was the third count in the indictment, arose from Howton's actions in the bedroom not his actions in the living room. Doc. 89. Specifically, the third count in the indictment charged him with kidnapping for choking AD. *Id.*

{¶17} The offense of kidnapping for which Howton was convicted was a violation of R.C. 2905.01(A)(4), which reads, in pertinent part, as follows:

> **(A) No person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other purpose, for any of the following purposes:**
>
> **\* \* \***
>
> **(4) To engage in sexual activity * * * with the victim against the victim's will;**

R.C. 2905.01(A)(4). For the defendant to be found guilty under this provision, the jury does not have to find that the kidnapping facilitated a nonconsensual sexual encounter. Rather, this statute only requires that the jury find that the restraint or removal was performed with the intention of facilitating a nonconsensual sexual

-13-

encounter. The jury determined that Howton had such an intent and convicted him of kidnapping accordingly. Thus, the offense of kidnapping was completed in the bedroom. Howton was not convicted of the rape that was alleged to have occurred contemporaneously with this kidnapping offense.

{¶18} The conviction for rape that Howton received arose from conduct that occurred some time after this first alleged rape. After Howton released AD from his grip and she regained consciousness, he was preparing to leave the house when he realized his shoes had blood on them. Doc. 144 at 302. He decided to stay until AD had run his shoes through the washing machine. *Id*. at 215-216, 302, 306. Doc. 145 at 590. By this time, AD and Howton had moved from the bedroom and into the living room. *Id*. at 597. According to Howton's testimony, he felt bad, at this point, about his behavior towards AD, talked with AD for a while, apologized for his actions, and asked for forgiveness. *Id*. At trial, AD testified that Howton proceeded to rape her a second time in the living room. Doc. 144 at 219-220. Howton testified that up to an hour had passed by between the incident in the bedroom and the sexual encounter that occurred in the living room. Doc. 145 at 597.

{¶19} Based on these facts, it is clear that the offenses of kidnapping and rape were committed separately. First, Howton admitted that he planned to leave after he completed the crime of kidnapping in the bedroom, which suggests that he had not yet formed the intent to rape her in the living room. His actions showed

that he seemed to believe that his activities at AD's house had come to a conclusion. This also suggests that the kidnapping and rape were not part of an ongoing series of criminal activities but were each two separate episodes of criminal activity. Second, an interlude of up to an hour occurred in between the commission of the crime of kidnapping in the bedroom and the commission of the crime of rape in the living room. During this time, AD and Howton talked; AD did laundry; and Howton formed a bed with blankets on the floor in the living room. This interval divides the kidnapping in the bedroom and the rape in the living room into two separate series of events.

{¶20} Third, these offenses occurred in different places in AD's house. The kidnapping primarily occurred in the bedroom. After Howton had completed this action, he ceased violently restraining AD and released her from his physical control. She then went into the living room voluntarily. It was in this room where he later began to restrain her forcibly a second time while he committed the offense of rape. The facts of this case show that these offenses were committed with separate conduct at different times and in different locations. These crimes are not, therefore, allied offenses of similar import that are subject to merger. For these reasons, Howton's first assignment of error is overruled.

*Second Assignment of Error*

{¶21} Under this assignment of error, Howton advances two arguments. First, he argues that the trial court erred in allowing the State to call rebuttal

witnesses who had not been disclosed to defense counsel prior to the commencement of the trial. He asserts that the State was aware that he was going to testify and, therefore, was aware of the possibility that Howton could comment on his character, which would 'open the door' to the admission of character evidence on rebuttal. Thus, Howton argues the fact that these witnesses could have been called for rebuttal was foreseeable and that the prosecutor, therefore, had a duty under Crim.R. 16 to disclose these witnesses prior to trial. Second, Howton here argues that the trial court also erred in allowing extrinsic evidence of other bad acts to be presented at trial through the State's rebuttal witnesses. On the basis of these arguments, Howton requests that this court vacate his convictions and order a new trial. We will address these two arguments in the order presented in Howton's brief.

Legal Standard for Undisclosed Witnesses

{¶22} Crim.R. 16(I) reads, in its relevant part, as follows: "Each party shall provide to opposing counsel a written witness list, including names and addresses of any witness it intends to call in its case-in-chief, or reasonably anticipates calling in rebuttal or surrebuttal." Crim.R. 16(I). Thus, "[t]he criterion for determining whether the state should have provided the name of a witness called for rebuttal is whether the state reasonably should have anticipated that it was likely to call the witness, whether during its case in chief or in rebuttal." *State v. Mossburg*, 3d Dist. Van Wert No. 15-06-10, 2007-Ohio-3343, ¶ 24, quoting *State*

*v. Lorraine*, 66 Ohio St.3d 414, 423, 613 N.E.2d 212 (1993), citing *State v. Howard*, 56 Ohio St.2d 328, 332-333, 383 N.E.2d 912 (1978). "A prosecutor does not have 'a duty to provide the names of witnesses that he reasonably did not anticipate would testify until testimony was presented by appellant which was then properly rebutted.'" *State v. Evans*, 9th Dist. Lorain No. 07CA009274, 2008-Ohio-4295, ¶ 7, quoting *Lorraine* at 423.

{¶23} "The purpose of a rebuttal witness is to 'explain, refute or disprove new facts introduced into evidence by the adverse party * * *.'" *State v. Dubose*, 1st Dist. Hamilton No. C-070397, 2008-Ohio-4983, ¶ 69, quoting *State v. McNeill*, 83 Ohio St.3d 438, 446, 700 N.E.2d 596 (1998). "The testimony of a rebuttal witness is only relevant to challenge the evidence introduced by the opponent, and the scope of this testimony is limited to such evidence." *State v. Adkins*, 4th Dist. Gallia No. 03CA27, 2004-Ohio-3627, ¶ 11, citing *McNeill* at 446. "The admission of rebuttal evidence rests within the sound discretion of the trial court, and an appellate court will not disturb a ruling on its admissibility absent an abuse of discretion." *State v. Weaver*, 12th Dist. Butler No. CA2009-01-022, 2009-Ohio-5923, ¶ 35, citing *State v. Finnerty*, 45 Ohio St.3d 104, 109, 543 N.E.2d 1233, 1238 (1989). "An abuse of discretion is more than an error of judgment; rather, it implies that the trial court's decision was unreasonable, arbitrary, or capricious." *State v. Thompson*, --- N.E.3d ---, 2017-Ohio-792, ¶ 11 (3d Dist.), quoting *Heilman v. Heilman*, 3d Dist. Hardin No. 6-12-08, 2012-Ohio-5133, ¶ 14.

Legal Analysis

**{¶24}** After examining the record, we do not find any evidence that the prosecutor had a duty under Crim.R. 16(I) to disclose the names of the rebuttal witnesses because the State did not reasonably anticipate that it was likely that SS and AH would be called to testify on rebuttal. Under Evid.R. 404(A)(1), the evidence presented through SS and AH could not have been introduced in the prosecution's case-in-chief and was admissible on rebuttal only if the defendant placed his own character into evidence during his testimony. Evid.R. 404(A)(1). The prosecutor could not have known that SS's testimony was admissible as character evidence on rebuttal until after hearing Howton proclaim during the Defense's case-in-chief that the crimes of which he had been accused were not consistent with his character. *Finnerty* at 108-109. *See State v. Hicks*, 6th Dist. Lucas No. L-02-1254, 2003-Ohio-4968, ¶ 18. Crim.R. 16(I) requires the State to disclose witnesses "it reasonably anticipates it is *likely* to call * * *." (Emphasis added.) *Howard* at 915. This standard does not require the State to anticipate every conceivable scenario that may arise out of the Defense's case-in-chief or to disclose any witness who could possibly be called on rebuttal as a consequence of every possible eventuality.

**{¶25}** The State was also unaware of the allegations that Howton had sexually assaulted AH until April 28, 2016, which was after the trial had already commenced. Doc. 105. The prosecutor, therefore, could not have disclosed AH's

name and address prior to trial. The duty of disclosure under Crim.R. 16(I) is continuing, but the record shows that the prosecutor disclosed this witness to defense counsel on the same day that the State had become aware of AH's allegations. The State forwarded AH's information to defense counsel after the prosecutor had the opportunity to investigate these allegations further. For these reasons, we hold that the State did not act in violation of Crim.R. 16(I) when it did not disclose the names of SS and AH prior to trial.

{¶26} Further, the State notified the Defense of its intention to call SS and AH as rebuttal witnesses during the first recess after the defendant brought his character into issue, though the prosecutor was not able to disclose SS and AH's names until she conducted further investigation that evening. Doc. 145 at 617. Doc. 146 at 622. In response, defense counsel requested a continuance from the trial court. *Id*. at 635-636. The trial court granted a continuance, giving defense counsel the entire weekend to prepare for the rebuttal witnesses. *See State v. Greiner*, 2d Dist. Greene No. 95-CA-08, 1996 WL 354765, 3 (June 28, 1996). Under Crim.R. 16(L), the granting of a continuance is a remedy for a prosecutorial violation of Crim.R. 16. Crim.R. 16(L). Even if the prosecutor had failed to disclose the names of these witnesses in violation of the discovery rules, the trial court granted a remedy for such a violation, removing the potential for prejudice against the defendant by the admission of this evidence. *See State v. Heinish*, 50 Ohio St.3d 231, 236, 553 N.E.2d 1026, 1032 (1990). Given the facts of this case,

we do not find any evidence that the trial court abused its discretion by admitting this evidence.

Legal Standard for Extrinsic Evidence of Other Acts

**{¶27}** Evid.R. 404(A) prohibits the admission of character evidence "for the purpose of proving action in conformity therewith on a particular occasion * * *." Evid.R. 404(A). One of several exceptions to this general rule follows in 404(A)(1), which states that

> **Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same is admissible; however, in prosecutions for rape, gross sexual imposition, and prostitution, the exceptions provided by statute enacted by the General Assembly are applicable.**

Evid.R. 404(A)(1).

> **In other words, Evid.R. 404(A)(1) allows a defendant to "offer evidence of his good character as proof that he did not commit the act charged because such conduct is not in accord with his character[,]" but if he does, "the prosecution [may] offer evidence of the bad character of the accused." "By introducing such evidence, the defendant 'opens the door' for the prosecution, which is then permitted to rebut or impeach the character evidence on cross-examination."**

(Citations omitted.) *State v. Velez*, 3d Dist. Putnam No. 12-13-10, 2014-Ohio-1788, ¶ 119.

**{¶28}** Evid.R. 404(A)(1) expressly subjects itself to statutory provisions in the Revised Code that further restrict the admissibility of character evidence in rape cases. R.C. 2907.02(D) demarcates these limitations and reads as follows:

> **Evidence of specific instances of the defendant's sexual activity, opinion evidence of the defendant's sexual activity, and reputation evidence of the defendant's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, the defendant's past sexual activity with the victim, or is admissible against the defendant under section 2945.59 of the Revised Code, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.**

R.C. 2907.02(D).

{¶29} However, "[a] defendant waives the statutory limitations regarding specific instances of sexual activity when the defendant 'opens the door' to the issue of his past sexual conduct." *State v. Depinet*, 3d Dist. Seneca No. 13-12-32, 2013-Ohio-1850, ¶ 18, citing *State v. Banks*, 71 Ohio App.3d 214, 593 N.E.2d 346 (3d Dist.1991). *See State v. Seymour*, 2d Dist. Montgomery No. 14324, 1994 WL 660763 (Nov. 23, 1994); *State v. Fannin,* 4th Dist. Ross No. 98CA2456, 1999 WL 402231 (June 11, 1999); *State v. Chojnacki*, 9th Dist. Medina No. 2326-M, 1994 WL 721918 (Dec. 30, 1994); *State v. Bozeman*, 12th Dist. Butler No. CA2008-10-248, 2009-Ohio-3677, ¶ 49-50. Thus, when a defendant in a rape case 'opens the door' by referencing his or her character or past behavior—regardless of whether this behavior was sexual activity or other acts—the prosecution "may call as rebuttal witness individuals who have observed a defendant engage in acts that were inconsistent with his assertions." *State v. Hardie*, 2d Dist. Montgomery No. 19954, 2004-Ohio-6783, ¶ 21, citing *State v. Agner*, 135 Ohio App.3d 286, 293,

733 N.E.2d 676 (1999); *Banks*, *supra,* at 219-220. *See Holt v. State*, 107 Ohio St. 307, 140 N.E. 349 (1923).

{¶30} "The admission of such [other-acts] evidence lies within the broad discretion of the trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that created material prejudice." *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14, quoting *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 66. "An abuse of discretion is more than an error of judgment; rather, it implies that the trial court's decision was unreasonable, arbitrary, or capricious." *Schroeder v. Niese*, --- N.E.3d ---, 2016-Ohio-8397, ¶ 7, quoting *Heilman* at ¶ 14. "When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court." *State v. Plott*, --- N.E.3d ---, 2017-Ohio-38, ¶ 52 (3d Dist.), citing *State v. Slappey*, 3d Dist. Marion No. 9–12–58, 2013-Ohio-1939, ¶ 12.

Legal Analysis

{¶31} On appeal, the prosecution argues that Howton made three statements during direct examination that put his character at issue and 'opened the door' to the admission of SS and AH's testimony on rebuttal. First, the prosecution points to a statement made by Howton to his defense counsel when he was explaining why he repeatedly hit AD. In this exchange, Howton stated, "I felt like she made me get out of my character and, you know, put my hands on her

after she put her hands on me first." Doc. 145 at 593-594. Second, the State points to the reason that he gave his defense counsel for apologizing to AD after he hit her. He said, "Yea, I should have had more self-control because I'm a man and, you know, I don't feel like it's right for a man to hit a woman." *Id.* at 596-597. Third, the prosecution points to a statement in which Howton was relaying the content of a conversation he had with the police investigator assigned to this case. When asked by his defense counsel at trial whether he denied the allegations of rape during the police investigation, Howton said, "I always told him [the investigator] that I didn't. I ain't never been known to be no person like that." *Id.* at 610.

**{¶32}** With these statements, Howton defended himself by arguing that the accusations against him were inconsistent with his character. His statements represent himself as a peaceful person that is not disposed to violent behavior. *Id.* at 593-594, 596-597, 610. The first two statements put his character at issue in regard to the offenses of kidnapping and felonious assault. The third statement put his allegations of his good character forward as a reason to believe that he did not commit the crime of rape. *Id.* In so doing, he made his character an issue in this trial and 'opened the door' for the prosecution to rebut these assertions with evidence showing that his character did not conform to his representations at trial. *See Velez* at ¶ 118-119, citing *State v. Jacobs*, 4th Dist. Gallia No. 03CA24, 2004-Ohio-3393, ¶ 20; *State v. Grubb*, 111 Ohio App.3d 277, 675 N.E.2d 1353 (2d

Dist.1996). Further, we do not see any other indications in the record that the trial court abused its discretion in admitting this evidence. For these reasons, Howton's second assignment of error is overruled.

*Third Assignment of Error*

{¶33} In his third assignment of error, Howton argues that he was prejudiced by the ineffective assistance of his trial counsel. While Howton was testifying, defense counsel asked him several questions about whether AD struck Howton first and argued in closing statements that Howton's violent actions were provoked by AD. Doc. 145 at 587, 593-594, 597, 611. *See* Doc. 147 at 801-802. On appeal, Howton argues that it was not logical for his trial counsel to make this argument and then not request a jury instruction for aggravated assault. As a consequence, the trial court only gave the jury instructions for the more serious offense of felonious assault. Howton argues that had the jury been given the instructions for aggravated assault, they may have found from these facts that he acted in response to provocation, finding him guilty of a lesser offense. He now requests that this court reverse his conviction for felonious assault and order a new trial.

Legal Standard

{¶34} Under Ohio law, "a properly licensed attorney is presumed to carry out his duties in a competent manner." *State v. Gee*, 3d Dist. Putnam No. 12-92-9, 1993 WL 270995 (July 22, 1993). Thus, the petitioner has the burden of proving

the ineffective assistance of counsel claim. *State v. Mayse*, --- N.E.3d ---, 2017-Ohio-1483, ¶ 22 (3d Dist.), quoting *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999). Under the test set forth in *Strickland v. Washington*, the petitioner must establish two elements. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). If the petitioner cannot prove one of these elements, "it [is] unnecessary for a court to consider the other prong of the test." *State v. Walker*, 2016-Ohio-3499, 66 N.E.3d 349, ¶ 20 (3d Dist.).

{¶35} First, the petitioner must establish that "counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland* at 687. "In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95, citing *Strickland* at 687. "Counsel need not raise meritless issues or even all arguably meritorious issues." *Mayse* at ¶ 24, citing *State v. Jones*, 91 Ohio St.3d 335, 354, 744 N.E.2d 1163 (2001). "[T]he failure to make objections is not alone enough to sustain a claim of ineffective assistance of counsel." *Id*. at ¶ 103, citing *State v. Holloway*, 38 Ohio St.3d 239, 244, 527 N.E.2d 831 (1988); *State v. Gumm*, 73 Ohio St.3d 413, 428, 653 N.E.2d 253

(1995). Further, "counsel's decision not to request a jury instruction falls within the ambit of trial strategy." *Conway* at ¶ 111.

**{¶36}** Second, the petitioner needs to establish "that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland* at 687. "To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Conway* at ¶ 95, citing *Strickland* at 687; *State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989). "Appellate courts examine the record to determine "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." *State v. Rodriquez*, 3d Dist. Defiance No. 4-16-16, 2017-Ohio-1318, ¶ 9, quoting *State v. Hester*, 45 Ohio St.2d 71, 341 N.E.2d 304 (1976), paragraph four of the syllabus.

Legal Analysis

**{¶37}** On appeal, Howton has failed to establish that "counsel's performance was deficient" and that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, *supra*, at 687. He alleges that his trial counsel should have requested jury instructions for the offense of aggravated assault in addition to the instructions that were provided for the offense of felonious assault and seems

to suggest that, upon trial counsel's request, the trial court would have been obligated by law to include the requested instruction.

{¶38} A trial court, however, has the discretion to deny requested jury instructions unless "the requested instructions contain a correct, pertinent statement of the law and are appropriate to the facts * * *." *State v. Lessin*, 67 Ohio St.3d 487, 494, 620 N.E.2d 72, 77 (1993). The following analysis of this case will show that the trial court would not have been obligated to give these jury instructions if they had been requested. Thus, the decision by defense counsel not to request jury instructions for the offense of aggravated assault was a matter of trial strategy and not a failure to act that falls below the standard of reasonableness to which attorneys are held. *See State v. Harrison*, 2015-Ohio-1419, 31 N.E.3d 220, ¶ 89, citing *State v. Morris*, 9th Dist. Summit No. 22089, 2005-Ohio-1136, ¶ 100; *State v. Fisk*, 9th Dist. Summit No. 21196, 2003-Ohio-3149, ¶ 9; *State v. Hill*, 73 Ohio St.3d 433, 443, 653 N.E.2d 271 (1995); *State v. Oates*, 2013-Ohio-2609, 993 N.E.2d 846, ¶ 9 (3d Dist.).

{¶39} The elements for the crimes of felonious assault and aggravated assault are identical except that the offense of aggravated assault has "the additional mitigating element of serious provocation." *State v. Deem*, 40 Ohio St.3d 205, 211, 533 N.E.2d 294, 299-300 (1988). *See* R.C. 2903.12. *Compare* R.C. 2903.11.

> **[I]n a trial for felonious assault, where the defendant presents sufficient evidence of serious provocation (such that a jury could both reasonably acquit defendant of felonious assault and convict defendant of aggravated assault), an instruction on aggravated assault (as a different degree of felonious assault) must be given.**

*Id.* at 300. Under this rule, "[p]rovocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force." *Id.*, quoting *State v. Mabry*, 5 Ohio App.3d 13, 449 N.E.2d 16 (1982), paragraph five of the syllabus.

{¶40} In this case, the defendant admitted at trial that he had his arm around AD's throat, grabbed her neck, pushed her, and slapped her. Doc. 145 at 586, 588, 592-593. In letters he sent to AD while he was incarcerated, Howton admitted that he "lost it," was drunk at the time of the incident, "smacked [her] a couple times too hard," "beat [her] up," and choked her. Doc. 146 at 683-685. On appeal, Howton points to the fact that AD punched him one time as the "serious provocation" that prompted his violent response. Courts across Ohio, however, have held that "a victim's simple pushing or punching does not constitute sufficient provocation to warrant an aggravated assault instruction." *State v. Bryan*, 4th Dist. Gallia No. 03CA3, 2004-Ohio-2066, ¶ 24, citing *State v. Koballa*, 8th Dist. Cuyahoga No. 82013, 2003-Ohio-3535; *State v. Pack*, 4th Dist. Pike No.

93CA525, 1994 WL 274429 (June 20, 1994). *State v. Pennington*, 5th Dist. Guernsey No. 16CA14, 2017-Ohio-1423, ¶ 19-20.

**{¶41}** Thus, AD's action was not enough "to arouse the passions of an ordinary person beyond the power of his or her control." *State v. Torres*, 3d Dist. Defiance No. 4-01-06, 2002 WL 418392 (March 18, 2002), quoting *State v. Shane*, 63 Ohio St.3d 630, 637, 590 N.E.2d 272 (1992). Since this evidence was not sufficient under Ohio law to require a jury instruction for aggravated assault, the decision not to request a jury instruction for the offense of aggravated assault was clearly a matter of trial strategy and not evidence of a deficient performance on the part of defense counsel. As Howton has not carried the burden of showing his trial counsel's performance was deficient, his third assignment of error is overruled.

*Conclusion*

**{¶42}** Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of Allen County Court of Common Pleas is affirmed.

***Judgment Affirmed***

**ZIMMERMAN and SHAW, J.J, concur.**

**/hls**