[Cite as *State v. Roby*, 2020-Ohio-6812.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2020-A-0024** |
| JOSHUA A. ROBY, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2019 CR 00355.

Judgment: Affirmed.

*Cecilia M. Cooper,* Ashtabula County Prosecutor, and *Shelley M. Pratt,* Assistant Prosecutor, Ashtabula County Prosecutor's Office, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Malcolm S. Douglas,* 113 North Chestnut Street, Jefferson, OH 44047 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Joshua Roby, appeals from the judgment of the Ashtabula County Court of Common Pleas, denying his motion for a new trial, which was filed subsequently to a trial by jury where he was found guilty of two counts of felonious assault. We affirm.

{¶2} On April 16, 2019, Michael Lutes (the "victim") arrived at the Bottom Line, a bar located in Conneaut, Ohio. Several people were in the establishment at the time:

appellant; his roommate, Henry Horvath; another patron, Zachary Papotta; and the bartender, Kellee Kramer. According to Mr. Horvath and Ms. Kramer, the victim grabbed the latter's arm as he passed her entering the bar. Mr. Horvath indicated the grab was aggressive, and Ms. Kramer pulled her arm away and walked behind the bar. Mr. Horvath asked Ms. Kramer "what that was all about" and she stated it happens all the time.

{¶3} According to Mr. Horvath, appellant approached the victim and asked whether he frequents other bars in the area and the victim ignored the question. Appellant exclaimed he really hates it "when people f-ing ignore [him]." The victim eventually asked appellant and Mr. Horvath if they would like a shot, which they declined because they were not drinking that night. According to Mr. Horvath, appellant stood up and each man advised the victim to leave. The victim stood up and appellant nudged him toward the door. Appellant ultimately pushed the victim from behind, whereupon the victim stumbled but caught himself on a pool table. Mr. Horvath maintained he placed himself between the two men at which point the victim picked up a pool stick and cocked it back prepared to swing. Mr. Horvath stated he punched the victim in the face, staggering him. Mr. Horvath asserted the victim pulled back the pool cue again and he punched him again. The victim stumbled and appellant took him to the floor. Appellant tried to take the pool stick but could not. Mr. Horvath stated that appellant then stood up and stomped on the victim's head. He then seized a different pool stick and struck the victim in the left eye with the implement. Both appellant and Mr. Horvath fled the scene.

2

{¶4} Ms. Kramer corroborated much of Mr. Horvath's rendition of events. She added that, after appellant initially engaged the victim and the two men refused the shots, the victim asked if "they wanted to go." Ms. Kramer stated that appellant and Mr. Horvath surrounded the victim and asked her if she wanted the victim removed. She said she did. After the victim grabbed a pool stick, Mr. Papotta stepped in to break up any potential altercation. He was pushed aside and, according to Ms. Kramer, punches started flying and she could no longer see the victim. She assumed he was on the ground. Ms. Kramer stated she witnessed appellant strike the victim with a pool stick prior to leaving. She asserted she never saw the victim throw a punch or swing the pool stick.

{¶5} Mr. Papotta's version of the melee was similar to both Mr. Horvath's and Ms. Kramer's. He stated, however, that he witnessed Mr. Horvath push the victim, then strike him. After that, he claimed appellant struck the victim twice in the face with the pool stick.

{¶6} According to the victim, when he arrived at the Bottom Line, there were no people present. Eventually, he observed people emerging from the bathroom area. He was watching television at the bar, but the music was "blaring" loudly. The victim noted he wears a hearing aid, and the background noise made it generally difficult to hear. He recalled an individual asking him "what is that, you're favorite fuckin' commercial, or what[?]" The victim did not know if the individual addressing him knew him or was being deliberately belligerent; in any event, he asked the bartender to get the individual and his friend each a shot. He ultimately identified the individual who addressed him as appellant.

3

{¶7} Approximately 30 seconds later, the two men approached and pinned him against the bar. He stated he was then struck with something and knocked unconscious. When he awoke, he remembered being kicked in the head. Emergency response workers were called, and the victim was sent via helicopter to University Hospitals in Cleveland. According to certified medical records, the victim suffered a ruptured eye globe; a fractured left eye orbit; comminuted fractures to the walls of the left sinus area; comminuted fractures of both nasal bones and nasal septum; several rib fractures; and a persistent small bowel obstruction.

{¶8} Appellant was indicted on one count of felonious assault, in violation of R.C. 2903.11(A)(1), a felony of the second degree; one count of felonious assault, in violation of R.C. 2903.11(A)(2), a felony of the second degree; one count of aggravated assault, in violation of R.C. 2903.12(A)(1), a felony of the fourth degree; and one count of aggravated assault, in violation of R.C. 2903.12(A)(2), a felony of the fourth degree. Appellant entered a plea of not guilty to the charges.

{¶9} A jury trial commenced on February 12, 2020. Appellant was found guilty on each of the felonious assault counts. On the day of sentencing, March 23, 2020, appellant filed a motion for continuance and a motion for new trial. The trial court overruled each motion; the trial court merged the counts for sentencing and appellant was sentenced to a term of seven to 10 and one-half years. Appellant now appeals and assigns the following as error:

{¶10} "The trial court failed to grant the appellant a new trial pursuant to newly discovered evidence."

4

{¶11} Appellant premised his motion for a new trial upon R.C. 2945.79. In *State v. Reed*, 65 Ohio St.2d 117, 123, fn. 1, the Ohio Supreme Court noted Crim.R. 33 superseded R.C. 2945.79. *See also State v. Guy*, 10th Dist. Franklin No. 17AP-322, 2018-Ohio-4836, fn. 1. Still, R.C. 2945.79 and Crim. R. 33(A)(6) are substantively similar and permit a court to grant a new trial when new evidence, material to the defense, is discovered which the defendant could not, with reasonable diligence discovered and produced at trial. Accordingly, the appellant's motion is, in effect, a Crim.R. 33(A)(6) motion.

{¶12} A motion for new trial pursuant to Crim.R. 33 is addressed to the sound discretion of the trial court and will not be disturbed on appeal save an abuse of discretion. *State v. Schiebel,* 55 Ohio St.3d 71 (1990), paragraph one of the syllabus. The phrase "abuse of discretion" is one of art and reflects in a judgment which does not comport with reason or the record. *State v. Underwood*, 11th Dist. Lake No. 2008-L-113, 2009-Ohio-2089, ¶30, citing *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925). Stated differently, an abuse of discretion is the "trial court's 'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting *Black Law's Dictionary* (8 Ed.Rev.2004) 11.

{¶13} The Supreme Court of Ohio has set forth criteria that must be met for a trial court to grant a motion for a new trial in a criminal case based on newly discovered evidence. The defendant must show that the new evidence: (1) is likely to change the result if a new trial is granted; (2) was discovered after the trial; (3) could not, in the exercise of due diligence, have been discovered before the trial; (4) is material to the

issues; (5) is not merely cumulative to the former evidence; and (6) does not merely impeach or contradict the former evidence. *State v. Petro*, 148 Ohio St. 505 (1947), syllabus.

{¶14} Appellant's motion for a new trial alleged that multiple individuals had observed the victim performing acts after the trial which he indicated he was no longer able to perform due to the injuries he sustained from the assault. Appellant submitted a video of the victim performing the alleged acts. Appellant maintained that because the victim presented alleged false testimony, his credibility was in question and a jury was entitled to evaluate the new evidence. His motion further asserted he had witnesses available that would attest to the victim's "aggressive nature" in the days and weeks following trial.

{¶15} Appellant was found guilty of two counts of felonious assault, in violation of R.C. 2903.11(A)(1) and (A)(2), both felonies of the second degree. The court merged the offenses for purpose of sentence and the state elected to proceed to sentencing on the finding of guilty pursuant to R.C. 2903.11(A)(1). That statute provides:

{¶16} (A) No person shall knowingly do either of the following:

{¶17} (1) Cause serious physical harm to another or to another's unborn;

{¶18} R.C. 2901.01(A)(5) defines serious physical harm, in pertinent part:

{¶19} (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

{¶20} (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement[.]

6

{¶21} We first point out that any potential testimony from third parties regarding the victim's alleged aggressive nature after the incident would likely be inadmissible because (1) it occurred post hoc and does not specifically relate to the victim's alleged aggressive conduct on the night of the incident and (2) the victim's character for violence is not an element of self-defense. *See* Evid.R. 405(B).

{¶22} Further, such evidence, even if admissible, would not necessarily add anything to the evidence presented at trial. Appellant essentially testified he was acting in self-defense when the victim pugnaciously grabbed a pool cue and threatened him. Further, Ms. Kramer testified she heard the victim ask appellant and Mr. Horvath if "they wanted to go," suggesting an invitation to fight. In this respect, the purportedly new evidence could be reasonably deemed cumulative.

{¶23} Furthermore, the CD attached to appellant's motion shows the victim in photographs in public places, including a bar or restaurant, where he seems to be mingling with various people. During his testimony, the victim described the injuries he sustained, most of which were to his left eye and head. He stated his left eye was "squished like a grape. I also lost a nerve on the top of my eye right here that leaves the whole left side of my head numb for the rest of my life, and my face * * * My lens was completely destroyed in my eye. They had to take that out at the time of surgery. And my retina was completely detached." He additionally testified that, "[t]hey just told me [during my] last appointment that I'm probably gonna be permanently blind, but when I open it, it actually makes things worse. I feel like I'm looking through a shampoo bottle. A shook up shampoo bottle."

{¶24} Although the images on the CD and appellant's allegations may suggest appellant is not unable to socialize or engage with friends in public, he did not testify he was home-bound or unable to interact socially due to the assault. The evidence, adduced by the victim and other witnesses, demonstrated appellant knowingly attacked the victim. Moreover, the evidence of the victim's medical records, along with his testimony reasonably supports the jury's conclusion that appellant's knowing actions caused the victim serious physical harm, pursuant to R.C. 2901.01(A)(5)(c) and (d). We therefore conclude that, pursuant to the *Petro* analysis, it is not necessarily material to the issues (namely, the statutory elements) nor would it likely change the result if a new trial was granted. We therefore conclude the trial court did not err in overruling appellant's motion for a new trial.

{¶25} Appellant's assignment of error lacks merit.

{¶26} For the reasons discussed, the judgment of the Ashtabula County Court of Common Pleas is affirmed.

TIMOTHY P. CANNON, P.J.,

MARY JANE TRAPP, J.,

concur.